IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

Civil No. 3:23- cv-00019

| | | |
|---|---|---|
| CHARLEE LANG; GREGORY LANG on behalf of minor daughter J.L., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS OAK GROVE LUTHERAN SCHOOL, MICHAEL SLETTE, BRENT WOLF AND AIMEE ZACHRISON'S MOTION TO DISMISS** |
| OAK GROVE LUTHERAN SCHOOL, through its Board of Regents; DANIEL STOA, in his official and individual capacity; MICHAEL SLETTE, in his official and individual capacity; BRENT WOLF, in his official and individual capacity; AMIEE ZACHIRSON, in her official and individual capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

\*\*\*                    \*\*\*                    \*\*\*

## I.    <u>INTRODUCTION</u>

Defendants Oak Grove Lutheran School ("Oak Grove"), Michael Slette ("Slette"), Brent Wolf ("Wolf"), and Aimee Zachrison[1] ("Zachrison") (collectively "Oak Grove Defendants") submit this memorandum of law in support of their motion requesting the Court dismiss all of Plaintiffs' claims arising under federal law for failure to state a claim upon which relief may be granted, and request the Court refuse to exercise supplemental jurisdiction over Plaintiffs' claims arising under state law.  In the alternative, Oak Grove Defendants request all of Plaintiffs' claims as against all Defendants be dismissed, in their entirety, as a matter of law for failure to state a claim upon which relief may be granted.

---

[1] The Complaint incorrectly spells this Defendant's name as Amiee Zachirson.

II.    **PLAINTIFFS' ALLEGATIONS**

Plaintiffs' Complaint is comprised of 129 numbered paragraphs (excluding numerous prayers for relief) spanning 23 pages.  The majority of the pleading is comprised of legal conclusions, often cast in the form of allegations of fact – all of which this Court may disregard for the purpose of this motion to dismiss.  Examples of legal conclusions alleged by Plaintiffs which should be ignored for purposes of this Rule 12 motion include, among other allegations, that any Plaintiff was sexually harassed or subjected to sexual discrimination.  Plaintiffs' pure allegations of fact do not support these legal conclusions.

Plaintiffs' Complaint alleges a hodge podge of unrelated events involving non-parties spanning a period of several years in a shotgun attempt to cobble together a plausible claim for relief.  Oak Grove Defendants deny any wrongdoing.  Central to Plaintiffs' claims is the allegation that a former track coach for Oak Grove, Defendant Daniel Stoa ("Stoa"), engaged in alleged wrongful conduct towards Plaintiff Charlee Lang ("Charlee"), then a student at Oak Grove, and that the Oak Grove Defendants allegedly failed to take any corrective action in relation thereto.

A.    **THE PARTIES AND JURISDICTION**

Plaintiffs allege Gregory Lang is the father of J.L. and Charlee and a resident of the State of North Dakota.  (Complaint [doc. 1] at ¶ 1.)  J.L. is a minor, and both J.L. and Charlee are former students of Oak Grove, and residents of North Dakota.  (*Id*. at ¶¶ 2-3.)  Oak Grove is a private school in North Dakota.  (*Id*. at ¶ 4.)  Plaintiffs allege Stoa was Oak Grove's track coach (*id*. at ¶ 13), Slette was Oak Grove's President (*id*. at ¶ 31), Wolf was Oak Grove's Activities Director (*id*. at ¶ 21), and Zachrison was Oak Grove's Superintendent (*id*. at ¶ 8).  Plaintiffs allege this Court has federal question subject matter jurisdiction over their claims pursuant to 28 U.S.C. § 1331.

(Complaint [doc. 1] at ¶ 9.)  Plaintiffs identify the individual Defendants in the caption of the Complaint in both their personal and official capacities.

### B.   ALLEGATIONS PERTAINING TO DEFENDANT STOA'S ALLEGED WRONGFUL CONDUCT AND OAK GROVE DEFENDANTS' KNOWLEDGE THEREOF

The Plaintiffs allege Stoa engaged in the following conduct directed at Plaintiffs:

13.   Charlee joined the varsity track team in 8th grade and began to report inappropriate behavior by male track coach, Coach Daniel Stoa ("Stoa"), including touching her hair and rubbing her back.

14.   Charlee's parents advised Charlee to maintain a distance from Stoa and to report any further incidents.

15.   After Stoa had sent Charlee a Snapchat friend request at 3 A.M., Mr. Lang contacted Oak Grove's Athletic Director to report the incident.

***

17.   During the 2019 track season, Defendant Stoa began attempting to contact Charlee via the social media application Snapchat.

18.   Defendant Stoa began attempting to communicate with Charlee via text messaging.

19.   Charlee refused all communications from Defendant Stoa and Plaintiff's reported the incidents to Defendant Wolf.

20.   Mr. Lang subsequently reported the incidents to Defendant Oak Grove, Defendant Slette and Defendant Zachirson [sic].

(Complaint [doc. 1] at ¶¶ 13-15, 17-20.)  The foregoing is the sum total of all allegations of fact regarding Stoa's alleged wrongful conduct involving any Plaintiff.  There is no alleged wrongful conduct on the part of Defendant Stoa in relation to Plaintiff J.L.  The pure allegations of fact concerning Stoa's conduct in touching Charlee's hair and rubbing her back on one occasion is not inherently sexual, nor abusive in nature.  Although Plaintiffs much later in their Complaint under their first cause of action (Title IX) allege "Defendant Stoa inappropriately touched Charlee" (¶ 63) and describe such touching as "inappropriate sexual touching" (¶70) constituting "sexual

harassment" (¶ 68), such allegations constitute legal conclusions which should be ignored by the Court in relation to this Rule 12 motion. Plaintiffs' pure allegations of fact of what allegedly occurred do not support such legal conclusions.

In addition, the allegation Charlee "began to report inappropriate behavior" (¶ 13) by Stoa does not allege when such reporting occurred or to whom such conduct was reported, let alone that it was reported to any Oak Grove Defendant at that time. In context, Plaintiffs' allegations assert Charlee made such reports to her parents, who then advised her to keep her distance from Stoa and to report any further incidents (¶14). All of Plaintiffs' allegations as to the timing of any reporting of these incidents to any Oak Grove Defendant allege such reporting occurred after-the-fact. The alleged touching incident is alleged to have occurred when Charlee was in the 8th grade and during track season (¶ 13), which would have been in the spring of 2018. In paragraph 17 Plaintiffs allege that "[d]uring the 2019 track season, Defendant Stoa began attempting to contact Charlee via the social media application Snapchat", and alleged in paragraph 18 Stoa "began attempting to communicate with Charlee via text messaging". Plaintiffs allege in paragraph 19 that "Charlee refused all communications from Defendant Stoa [i.e. alleged Snapchat and texts] and Plaintiff's [sic] reported the incidents to Defendant Wolf". Plaintiffs then allege in paragraph 20 "Mr. Lang subsequently reported the incidents to Defendant Oak Grove, Defendant Slette and Defendant Zachirson [sic]." These allegations can only reasonably be interpreted as alleging the first report to Oak Grove of Stoa's alleged unsuccessful attempts to contact Charlee via Snapchat or text occurred during the 2019 track season, with Oak Grove allegedly being advised thereof after-the-fact. Plaintiffs allege the touching incident occurred prior to Stoa's alleged unsuccessful attempts to communicate with Charlee via electronic means. Plaintiffs do not allege Oak Grove had any control over the Snapchat application, or the texting application allegedly utilized by Stoa.

Plaintiffs do not allege these attempted electronic communications occurred during Stoa's work hours for Oak Grove, and the 3 AM Snapchat friend request incident logically did not occur during Oak Grove's school hours.

The only allegations of conduct by Stoa occurring prior to the touching, Snapchat and texting incidents with Charlee are Plaintiffs' allegations in paragraph 16 that "[f]ollowing making the report [i.e. Mr. Lang's report to Oak Grove of the Snapchat friend request and texts], Mr. Lang learned that families had previously filed <u>concerns</u> since 2015 regarding Stoa's employment at Oak Grove[]", and in paragraph 21 that "[t]he <u>concerns</u> regarding Stoa from 2015 to 2020 were filed directly with Oak Grove's administration, including the President Defendant Slette and the Activities Director Defendant Wolf."  (Underlining added for emphasis).  Notably, Plaintiffs do not allege what the other families' purported "concerns" regarding Stoa's employment were, let alone allege facts establishing they involved anything sexual in nature, or otherwise abusive.

The remainder of Plaintiffs' allegations of fact pertain to alleged events for which there is no allegation any Plaintiff was involved.  For example, Plaintiffs allege "Defendant Stoa utilized the social media handle @NDHSScore in his capacity as an employee with Defendant Oak Grove" and "Defendant Stoa maintained inappropriate content on the @NDHSScore pages including scantily dress [sic] and nude girls appearing to be minors."  (Doc. 1 at ¶¶ 23-24.)  There is no allegation any Plaintiff observed these images, or were depicted in these images They were not. There is no allegation as to when this occurred, but in the context of the order of allegations in the Complaint, its clear this is alleged to have occurred subsequent to the alleged touching incident and Stoa's alleged unsuccessful attempts to communicate with Charlee via electronic means.  In addition, while Plaintiffs allege this "content was reported to Defendant Wolf" with no action being taken (¶ 25), there is no allegations as to when such reporting occurred, but in context, it had

to have been subsequent to the alleged touching, Snapchat and texting incidents.  Ultimately, there is no allegation any such prior expressed "concerns by others" involved any Plaintiff or involved any conduct by Stoa which put any Oak Grove Defendant on actual notice of abusive conduct by Stoa.

Plaintiffs' other allegations pertain to non-parties and subsequent events not involving any Plaintiff and are irrelevant to the issue of whether Plaintiffs have alleged plausible claims against any Defendant for which they have standing.  Stoa being charged on February 12, 2021 (years after the events involving Plaintiffs) with possession of child pornography and promoting a sexual performance by a minor, alleged in paragraph 30, is not alleged to have involved any Plaintiff (and it did not).  Plaintiffs admit Oak Grove terminated Stoa in February 2021 immediately after such charge was brought against Stoa and that Oak Grove barred Stoa from school premises.  (Doc. 1 at ¶ 31.)  Plaintiffs do not allege any Oak Grove Defendant was aware of Stoa's conduct which formed the basis for such criminal charge and any such knowledge would have no relevance to Plaintiffs' claims in this action.  In addition, Plaintiffs' allegation the Education Standards and Practices Board, on February 10, 2022, issued letters of reprimand to identified Oak Grove officials "for the student harassment concerns and the failure to perform their duties" is admitted by Plaintiffs to involve a "separate matter".  In other words, such events are not alleged to have involved Plaintiffs and occurred many years after the alleged events involving Plaintiffs.

## C.    ALLEGATIONS PERTAINING TO PLAINTIFFS' RETALIATION CLAIM

Plaintiffs also allege the following in relation to their claim of retaliation:

42    On July 19, 2021, Mr. and Mrs. Lang received a letter from Oak Grove censuring Mr. and Mrs. Lang as well as their two daughters who have attended Oak Grove since pre-kindergarten.

43.     The letter specifically stated that Charlee would have the opportunity to re-enroll in Oak Grove provided she, along with Mr. and Mrs. Lang, agreed to specific expectations for the 2021-2022 school year.

44.     These expectations included requiring Mr. and Mrs. Lang to receive prior written permission to be present on Oak Grove property and requiring Charlee to have weekly meetings with Oak Grove administration to build a "renewed relationship/connection" with the Oak Grove community.

45.     The letter also stated that failure to agree and comply with the expectations would result in expulsion from Oak Grove for both Lang daughters.

46.     Charlee had no previous behavioral, academic, or athletic disciplinary actions in her thirteen years at Oak Grove.

47.     Charlee wrote a response letter to the school, requesting that she be allowed to return to Oak Grove and that her parents could freely attend Oak Grove athletic events without the stipulation of meeting weekly with Oak Grove administration.

48.     Oak Grove refused to grant her conditions.

49.     J.L. was not afforded an opportunity to re-enroll under any conditions.

50.     J.L. also had no previous behavioral, academic, or athletic disciplinary actions in her years at Oak Grove.

51.     Mr. and Mrs. Lang transferred both daughters to a different school for the 2021-2022 school year.

(Complaint [doc. 1] at ¶¶ 42-51.)

Oak Grove denies Plaintiffs' allegations and portrayal of the events at issue which omit

disruptive conduct by the Lang family wholly unrelated to the events alleged in this lawsuit.[2]

_____

[2] The July 19, 2021 letter from Oak Grove to Mr. and Mrs. Lang specifically identified and discussed in Plaintiffs' Complaint above is provided to the Court as Exhibit A to the *Affidavit of Shawn A. Grinolds* dated April 24, 2023, filed herewith.  This letter may be considered by this Court in ruling upon Oak Grove's Rule 12 motion to dismiss without converting the motion to one for summary judgment as being incorporated by reference and integral to Plaintiffs' complaint.  *See Miller v. Redwood Toxicology Laboratory, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is

Regardless, Plaintiffs' retaliation claim is premised upon retaliation for Plaintiffs' alleged reporting of sex discrimination in violation of Title IX.  However, as discussed above, Plaintiffs' allegation of sex discrimination is a legal conclusion and the allegations of fact as to Stoa's conduct at issue, even if true, do not constitute sex discrimination.  Plaintiffs do not allege they told any Oak Grove Defendant that Stoa's alleged conduct was sexual in nature prior to either the alleged touching or attempted communication incidents identified in the Complaint.  Any alleged retaliation was not in relation to any allegation of sex discrimination.  Further, these allegations relate to Charlee's and J.L.'s admission to Oak Grove for the following academic year, which, as explained in the Argument below, admissions to elementary and secondary schools are excepted from Title IX's prohibition against discrimination (Oak Grove denies any discrimination occurred to begin with).

## D.     PLAINTIFFS' CAUSES OF ACTION

Plaintiffs allege five causes of action against Oak Grove Defendants.  In Count One, Plaintiffs allege Defendants violated Title IX of the Education Act Amendments of 1972, codified at 20 U.S.C. § 1681 et seq., which prohibits discrimination based on sex in educational institutions receiving federal funds.  (Complaint [doc. 1] at ¶¶ 57-75.)  Plaintiffs allege Oak Grove Defendants failed to affirmatively take corrective measures, including conducting a full and thorough investigation into the events involving Charlee and Stoa.  (*Id*. at ¶ 68.)  Plaintiffs also allege Oak Grove Defendants violated their First Amendment rights by retaliating against Plaintiffs due to

---

unquestioned;' without converting the motion into one  for summary judgment. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice  and Procedure* § 1357 (3d ed. 2004)").  The July 19, 2021 letter does not reference Stoa or any allegation of sex discrimination by Plaintiffs. Instead, the letter references inappropriate and disruptive conduct by the Lang family wholly unrelated in time and subject matter from the alleged events involving Stoa in this case.

their complaints of Title IX discrimination.  (*Id*. at ¶¶ 69-71.)  In Count Two, Plaintiffs essentially allege the same conduct allegedly supporting their Title IX claim also entitles them to relief for sex discrimination under 42 U.S.C. § 1983.  (Complaint [doc. 1] at ¶¶ 76-86.)  Plaintiffs also allege claims under North Dakota state law of negligence (Count Three), intentional infliction of emotional distress (Count Four) and negligent infliction of emotional distress (Count Five).

## III.   <u>APPLICABLE STANDARD – FED. R. CIV. P. 12</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the court takes all facts alleged in the complaint to be true.  *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Id*. (citations omitted).  The Court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint.  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Id*.  "[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims, . . ., rather than facts that are merely consistent with such a right.'"  *Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009), quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).  "[D]etermining whether a complaint states a plausible claim is context-specific,

requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.E.2d 868 (2009).

IV.   **ARGUMENT**

A.   **PLAINTIFFS' OFFICIAL CAPACITY CLAIMS AGAINST INDIVIDUAL DEFENDANTS MUST BE DISMISSED**

Plaintiffs' official capacity claims against the individual Defendants fail as a matter of law. Plaintiffs' official capacity claims against the individual Defendants are redundant as all such claims are effectively claims against their employer.

> [T]he Eighth Circuit has consistently held that "[a] suit against a government officer in [their] official capacity is functionally equivalent to a suit against the employing governmental entity." *McKay v. City of St. Louis*, 960 F.3d 1094, 1102 (8th Cir. 2020) (quoting *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010)); *see also Doe v. Univ. of Ark. - Fayetteville*, 974 F.3d 858, 866 (8th Cir. 2020) ("An official-capacity claim is a claim against the institution."). Such a claim is properly "dismissed as redundant if the employing entity is also named." *King v. City of Crestwood*, 899 F.3d 643, 650 (8th Cir. 2018).

*Doe v. Bd. of Regents of Univ. of Nebraska*, 509 F. Supp. 3d 1133, 1139 (D. Neb. 2020). As the individual Defendants' employer at the time of the events at issue, namely Oak Grove, is a named defendant, Plaintiffs' official capacity claims against individual Defendants must be dismissed.

B.   **PLAINTIFFS FAIL TO ALLEGE PLAUSIBLE CLAIMS UNDER TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972 (COUNT ONE)**

Plaintiffs' claims under Title IX should be dismissed as a matter of law as: 1) there is no private right of action under Title IX against school officials, teachers or individuals; 2) Plaintiffs' have not alleged facts establishing sex discrimination; 3) elementary and secondary schools are excepted from Title IX's prohibition against sex discrimination in admissions; 4) no facts have been alleged to establish any Oak Grove Defendant had actual knowledge of a prior act of sex discrimination by Stoa of which Oak Grove was deliberately indifferent, and which effectively

caused Plaintiffs to be subjected to any subsequent sex discrimination by Stoa; 5) Stoa's alleged conduct was not so severe, pervasive, and objectively offensive that they can be said to deprive Plaintiffs of access to the educational opportunities or benefits provided by Oak Grove; and 6) there can be no retaliation absent a complaint of actual sex discrimination.  In addition, Plaintiff's request for punitive damages is not available under Title IX.

1.  **All Title IX Claims Against Individual Defendants Must Be Dismissed As There Is No Implied Private Right Of Action Under Title IX Against School Officials, Teachers or Individuals**

Title IX of the Education Act Amendments of 1972 is codified at 20 U.S.C. § 1681, et. seq., and its general prohibition against discrimination provides as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, . . . .

20 U.S.C. § 1681(a).  Title IX's "only express enforcement mechanism, § 1682, is an administrative procedure resulting in the withdrawal of federal funding from institutions that are not in compliance.  In addition, [the Supreme Court] has recognized an implied private right of action . . . [in which] both injunctive relief and damages are available." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 255 (2009).  However, "Title IX reaches institutions and programs that receive federal funds, which may include nonpublic institutions, § 1681(c), <u>but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals</u>[.]"  *Id.* at 257 (underline added for emphasis).  Plaintiffs' Title IX claims against the individual defendants in this case, namely Stoa, Slette, Wolf and Zachrison, are therefore subject to dismissal as a matter of law as Title IX claims are not viable against individuals, only institutions and programs which receive federal funds.

2.  **All Title IX Claims Against All Defendants Must Be Dismissed As Plaintiffs' Have Not Alleged Facts Establishing Sex Discrimination**

Plaintiffs' Title IX claims as against all Defendants also fail as a matter of law as Plaintiffs' pure allegations of fact fail to establish any Plaintiff was actually sexually harassed by Defendant Stoa. The pure allegations of fact of what Defendant Stoa allegedly did in relation to any Plaintiff are both few and vague, and are as follows:

13. Charlee joined the varsity track team in 8th grade and began to report inappropriate behavior by male track coach, Coach Daniel Stoa ("Stoa"), including touching her hair and rubbing her back.

14. Charlee's parents advised Charlee to maintain a distance from Stoa and to report any further incidents.

15. After Stoa had sent Charlee a Snapchat friend request at 3 A.M., Mr. Lang contacted Oak Grove's Athletic Director to report the incident.

***

17. During the 2019 track season, Defendant Stoa began attempting to contact Charlee via the social media application Snapchat.

18. Defendant Stoa began attempting to communicate with Charlee via text messaging.

19. Charlee refused all communications from Defendant Stoa and Plaintiff's reported the incidents to Defendant Wolf.

The foregoing is the sum total of all allegations of fact regarding Defendant Stoa's alleged wrongful conduct involving any Plaintiff. Notably, the pure allegations of fact concerning Defendant Stoa's conduct in touching Charlee's hair and rubbing her back on one occasion is not inherently sexual, nor harassing in nature. This is not a case involving an alleged rape or assault, nor does it involve an allegation an intimate body part was touched. Defendant Stoa's unsuccessful attempts to communicate with Charlee via Snapchat and texts, without more, do not constitute sexual harassment. There is no allegation that Charlee told Stoa to stop his attempted communications, or that Stoa continued his attempted communications after any reports thereof were allegedly made to Oak Grove. In addition, no allegation is made as to the content of those

12

communication attempts by Stoa to Charlee, nor the content of some family communications allegedly made to Defendants Slette, Wolf and Zachrison, let alone any allegation of actual communications of a sexual or other inappropriate nature.  The remainder of the allegations of fact in the complaint pertain to other matters involving other individuals spanning a period of years, and do not allege any involvement with any Plaintiff.  Plaintiffs lack standing to assert any claim on behalf of any non-party.

In addition, Plaintiffs have not made a single allegation of fact of wrongful conduct amounting to sexual harassment of Plaintiff J.L.  The only allegations of fact involving J.L. is that she "was not afforded an opportunity to re-enroll under any conditions[]" at Oak Grove, and "J.L. also had no previous behavioral, academic, or athletic disciplinary actions in her years at Oak Grove."  (Doc. 1 at ¶¶ 49, 50.)  Plaintiff J.L.'s claims only pertain to Oak Grove's handling of her admissions to Oak Grove.  As discussed in the next Section below, Title IX has no application to admissions to elementary and secondary schools.  No allegation is made that J.L. reported any sexual harassment or was sexually harassed by any Defendant.  J.L.'s Title IX claims fail on this basis as well.

**3.      Any Title IX Claim Of Discrimination In Regard To Admissions At Oak Grove Must Be Dismissed**

To the extent any of the Plaintiffs' claims may be interpreted as alleging discrimination in relation to admissions to Oak Grove, any such claim must also be dismissed as a matter of law. *See, e.g. Complaint* (doc. 1) at ¶ 71(3) ("Defendants wrongfully terminated Charlee and J.L.'s enrollment as students at defendant Oak Grove resulting in Plaintiffs inability to continue her education required to obtain their high school diplomas.").  This is because preschools, elementary schools and secondary schools are expressly excepted from § 1681's prohibition against

discrimination in regard to <u>admissions</u>.  20 U.S.C. § 1681(a)(1); *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009).

**4.      Plaintiffs' Title IX Claims Must Be Dismissed For Lack Of Facts To Establish Oak Grove Had Prior Actual Knowledge Of A Substantial Risk of Sexual Harassment By Stoa, That Oak Grove Was Deliberately Indifferent To Such Actual Knowledge And Effectively Caused Any Plaintiff To Thereafter Be Subjected To Sex Discrimination**

"[A] recipient of federal funds may be liable in damages under Title IX only for its own misconduct.  The recipient itself must exclude persons from participation in, . . . deny persons the benefits of, or . . . subject persons to discrimination under its programs or activities in order to be liable under Title IX.  The Government's enforcement power may only be exercised against the funding recipient, . . . and we have not extended damages liability under Title IX to parties outside of this power."  *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640-41 (1999) (citations and quotation marks omitted).

> Accordingly, we rejected the use of agency principles to impute liability to the [school] district for the misconduct of its teachers.  Likewise, we declined the invitation to impose liability under what amounted to a negligence standard – holding the [school] district liable for its failure to react to teacher-student harassment of which it knew or *should have* known.  Rather, we concluded that the **[school] district could be liable for damages only where the district itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge.**

*Id.* at 642 (italics in original, bold added).  In other words, a recipient of federal funds is not liable for its employee's wrongful action, but only "from an official decision by the recipient not to remedy the violation."  *Id*.  In addition, "recipients could be liable in damages only where their own deliberate indifference effectively caused the discrimination."  *Id.* at 642-43 (citing *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 291 (1998)).

14

Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment.  A recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action.

***

[Title IX's] plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs.  If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment.  That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. . . .  Moreover, because the harassment must occur under the operations of the funding recipient, . . . the harassment must take place in a context subject to the school district's control. . . . .

  These factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs.  Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs.

*Davis*, 526 U.S. at 644-45 (citations omitted).  Therefore, a funding recipient's liability is dependent upon the recipient's control over the harasser and the context/environment in which the harassment occurs.  *See Berg v. Fargo Public Sch. Dist.*, 2023 WL 2599569 **3-5 (D.N.D. March 22, 2023) (granting summary judgment dismissal of student's Title IX claim against school for single incident of sexual assault by another student due to lack of "causal nexus" between sexual assault, which occurred at private residence over which school had no control, school's lack of actual advance knowledge, and because a single instance of harassment did not satisfy the requirement that discrimination be severe, pervasive, and objectively offensive; also  refusing to exercise supplemental jurisdiction over students remaining state law negligence claim following dismissal of all federal claims).

The United States Court of Appeals for the Eighth Circuit, in *Podrebarac v. Minot State University*, interpreted the "actual notice" or "actual knowledge" requirement as not being met where only after-the-fact notice of the harassment had been given to the funding recipient.  835

Fed.Appx. 163, 164 (8th Cir. 2021).   A plaintiff must allege the school had prior notice of a substantial risk of harassment in the school's programs.   *Id*. (citing *K.T. v. Culver-Stockton Coll*., 865 F.3d 1054, 1058-59 (8th Cir. 2017)).   The Court in *Podrebarac* rejected the former student's arguments the school must have known of the risk because 1) there were rumors the teacher spent time late at night with students and that furniture blocked the line of sight to his office, 2) the teacher asked the school for permission for the teacher and student to attend a music convention together, and 3) the teacher had made a comment about another student's weight a couple of years earlier.   *Id*. at 165.   The Court noted that spending "excessive amounts of time with students, does not, 'without more,' create a 'reasonable inference of sexual' misconduct, much less actual knowledge that it is happening."   *Id*.   The Court also rejected the contention that "should have known" was the same as "actual knowledge" as required to support a Title IX claim.   *Id*. (citing *P.H. v. Sch. Dist. Of Kansas City, Missouri*, 265 F.3d 653, 663 (8th Cir. 2001) (explaining that there is no Title IX liability when a school fails "to react to teacher-student harassment of which it *should have* known").   Further, the Court in *Podrebarac* cited another Eighth Circuit appellate case wherein it was determined that a school's knowledge that a male coach had texted a female student he was having sexual relations with messages like "OMG you look good today," "tell your mom I love her," and "Are you drunk yet?" did not provide the school with actual knowledge of sexual misconduct for liability under Title IX.   *Podrebarac,* at 165 (citing *Doe v. Flaherty*, 623 F.3d 577, 585 (8th Cir. 2010)).

In the present case, Plaintiffs vaguely allege Stoa attempted to contact Charlee via Snapchat and texts, without alleging the content of those messages.   Such allegations of fact are insufficient to state a plausible claim under Title IX.   The allegations, even if true, do not objectively establish

sexual misconduct or the school's advance actual knowledge such had occurred or was likely to occur.

Plaintiffs' Complaint also does not allege the location where Stoa's alleged inappropriate touching of Charlee's hair and rubbing of her back occurred, whether on school property, during a school event, or in some other environment or context outside the control of Oak Grove.  The allegations pertaining to the Snapchat friend request at 3 A.M. logically occurred outside school operating hours, off school property, and via a social media app for which Oak Grove had no control.  Stoa's alleged attempts to contact Charlee via text messages are also vague as to when this occurred and where Stoa and Charlee were physically located when this occurred.  Plaintiffs' allegations of fact are insufficient to establish Oak Grove controlled both Stoa and the environment/context in which the alleged harassment occurred.

Further, Plaintiffs admit that immediately after Stoa was criminally charged in February of 2021, years after the events involving Plaintiffs, Oak Grove terminated Stoa's employment and banned him from school premises.  The United States Supreme Court has also noted that Title IX does not dictate what disciplinary action is required by recipients to avoid deliberate indifference to known acts of sexual harassment.  "[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators [and] [s]chool administrators will continue to enjoy the flexibility they require" in making disciplinary decisions.  *Davis*, at 648 (citation omitted).  A funding recipient will only be deemed to be deliberately indifferent to acts of harassment "where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *Id.*

        **5.**       **Plaintiffs' Title IX Claims Against Oak Grove Must Be Dismissed For Lack Of Facts To Establish Stoa's Alleged Conduct Involving Charlee Was So Severe, Pervasive, And Objectively Offensive That It Can Be**

**Said To Deprive Plaintiffs Of Access To The Educational
Opportunities Or Benefits Provided By Oak Grove**

Further, a funding recipient can only be held liable for damages under Title IX "where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive victims of access to the educational opportunities or benefits provided by the school." *Davis*, at 650.

In the present case, Plaintiffs' allegations that Stoa touched Charlee's hair and rubbed her back on one occasion in 2018, and Stoa's unsuccessful attempts to contact her via Snapchat and texts in 2019, on their face are not so severe, pervasive and objectively offensive as to deprive Charlee of access to the educational opportunities or benefits provided by Oak Grove. **Plaintiffs admit they continued to attend Oak Grove, with Plaintiffs' parents' knowledge, well-after Stoa's alleged conduct involving Charlee, with both J.L. and Charlee not transferring to another school until the 2021-2022 academic year**. (Complaint [doc. 1] at ¶ 51.) Dismissal of Plaintiffs' Title IX claims is warranted on this basis alone.

6.     **Plaintiffs' Fail To Allege A Plausible Title IX Retaliation Claim**

Plaintiffs' claim of retaliation under Title IX fails as a matter of law because Plaintiffs do not allege they ever complained to any Oak Grove Defendant about being subjected to conduct which actually constituted sex discrimination. Retaliation is not actionable under Title IX absent a complaint of conduct constituting sex discrimination. As stated by the United States Court of Appeals in affirming a Rule 12 dismissal of a Title IX retaliation claim for failure to allege the plaintiff had complained of sex discrimination:

> *Jackson* [*v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005)] makes clear that Title IX retaliation claims must arise from a protected activity, like complaining of sex discrimination. *Jackson*, 544 U.S. at 174, 125 S.Ct. 1497 ("[Retaliation] is an intentional response to the nature of the complaint: an allegation of sex discrimination."). The district

18

court found that [plaintiff] had not engaged in a protected activity because she never complained of sex discrimination.

*Du Bois v. Bd. of Regents of Univ. of Minnesota*, 987 F.3d 1199, 1203-04 (8th Cir. 2021).

In the present case, as discussed above, Plaintiffs' pure allegations of fact do not allege Plaintiffs ever complained to any Oak Grove Defendant that they had been subjected to any conduct by Stoa which actually constituted sex discrimination, and the pure allegations of fact as to Stoa's conduct do not establish any sex discrimination occurred.  Plaintiffs' Title IX retaliation claim therefore fails as a matter of law.

### 7.    Plaintiffs' Claim For Punitive Damages Under Title IX Must Be Dismissed

In *Franklin v. Gwinnet County Public Schools*, the United States Supreme Court determined, in the context of a Title IX action by a high school student against a teacher/coach for damages for alleged intentional sex discrimination in connection with alleged sexual harassment and abuse, that federal courts have power to award "all appropriate relief" to remedy a violation of Title IX.  503 U.S. 60, 69 (1992).  The "any appropriate relief" wording in *Franklin* has been interpreted by some lower courts as permitting a claim for punitive damages for violations of Title IX.  *See, e.g. Schultzen v. Woodbury Central Community Sch. Dist.*, 187 F.Supp.2d 1099, 1108-09 (N.D. Iowa Feb. 22, 2002) (interpreting *Franklin* as allowing punitive damages for violations of Title IX: noting neither US Supreme Court nor Eighth Circuit has ruled on the issue).

However, the United States Supreme Court has more recently determined that punitive damages are not recoverable for violations of similar regulations enacted pursuant to Spending Clause Legislation.  In *Barnes v. Gorman*, 536 U.S. 181 (2002) (decided post-*Schultzen*), the Court determined punitive damages were not recoverable for violations of Title VII, which prohibits sex discrimination in the workplace, on the basis Title VII was enacted pursuant to Congress' Spending

Clause Legislation, which is contractual in nature.  *Id.* at 185-86.  In essence, recipients of federal

funds contractually agree to abide by Title VII regulations as a condition to the receipt of federal

funds, and therefore any breach of those regulations only warrant damages of a contractual nature.

Punitive damages are generally not allowed under contract based claims, and are therefore not

available for a breach of Title VII.  *Id.* at 187.  In arriving at this conclusion, the Supreme Court

in *Barnes* discussed at length its prior decisions under Title IX, including the "any appropriate

relief" language in *Franklin*, noting that Title IX was also enacted pursuant to Spending Clause

Legislation.  *Id.* at 184-87.  Although *Barnes* did not involve a Title IX claim, and its discussion

of Title IX in that case was dicta, the analysis in *Barnes* and discussion of *Franklin* and other Title

IX cases, strongly indicates that punitive damages are not recoverable in a Title IX case.

Therefore, Plaintiffs' demand for punitive damages in relation to their Title IX claims, even

assuming their Title IX claims are otherwise viable, should be dismissed as a matter of law.

    **C.**    **PLAINTIFFS FAIL TO ALLEGE PLAUSIBLE CLAIMS UNDER 42 U.S.C.**
              **§ 1983 (COUNT TWO)**

        **1.**    **Section 1983 Has No Application To Private Schools, And School
Officials, Teachers Or Other Individuals Employed By Private
Schools As They Are Not State Actors And Do Not Act Under Color
Of State Law In Investigating And Disciplining An Allegation of Sex
Discrimination**

"[T]he Fourteenth Amendment, which prohibits states from denying federal constitutional

rights and which guarantees due process, <u>applies to acts of the states, not to acts of private persons

or entities</u>.  And § 1983, which was enacted pursuant to the authority of Congress to enforce the

Fourteenth Amendment, prohibits interference with federal rights under color of state law."

*Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38 (1982) (citations omitted) (underline added for

emphasis).  The United States Supreme Court in *Rendell-Baker* affirmed the dismissal of federal

constitutional claims asserted by discharged employees against a non-profit private school.  The

Court determined that a non-profit, privately operated school was not a state actor subject to a civil rights action under § 1983 despite virtually all of the school's income being derived from government funding, and despite the provision of education as a "public function" because such function was not exclusively a public function.

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted). Private schools are not state actors by virtue of their adoption of Title IX grievance procedures. *Doe v. Case W. Reserve Univ.*, 2017 WL 3840418, at *10 (N.D. Ohio Sept. 1, 2017) (collecting cases); *Doe v. Harvard University*, 462 F.Supp.3d 51, 63-64 (D. Mass. May 28, 2020). A private university's actions of investigating and disciplining an allegation of sexual assault was not a traditional and exclusive state function, and therefore the university did not qualify as a state actor for purposes of former student's § 1983 action, despite school being subject to Title IX requirements. *Doe v. Washington University*, 434 F.Supp.3d 735, 747-48 (E.D. Mo. Jan. 1, 2020) (citing numerous cases in support). As Oak Grove is a private school (doc. 1 at ¶ 4), neither the school nor its employees were state actors or acting under color of law in relation to Plaintiffs' claims. Dismissal of Plaintiffs' § 1983 claim as against all Defendants is warranted on this basis alone.

## 2. Plaintiffs Fail To Allege Facts Establishing Any Violation Of Their Constitutional Rights

Plaintiffs' § 1983 claim also fails for failure to allege facts to establish a plausible claim of violation of their federal constitutional rights.

School district officials can be liable under § 1983 if they are deliberately indifferent to acts committed by a teacher that violate a student's constitutional rights. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (a

21

Title IX case drawing an analogy to the deliberate indifference standard of § 1983). The plaintiffs must show that the district officials received notice of a pattern of unconstitutional acts, demonstrated deliberate indifference to the acts, failed to take sufficient remedial action, and that such failure proximately caused the injury to the students. *See Jane Doe A v. Special Sch. Dist. of St. Louis County,* 901 F.2d 642, 645 (1990).

*Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000).

Allegations of Stoa's unsuccessful attempts to contact Charlee via Snapchat and texts do not actually allege discrimination based upon gender, or amount to a constitutional violation. Plaintiffs do not allege what the attempted electronic communications said, do not specifically allege when Stoa's alleged actions in this regard were reported to anyone at Oak Grove, do not allege the electronic media allegedly used by Stoa was under the control of Oak Grove, and do not allege these incidents occurred during Stoa's working hours.  Even if Stoa was successful in communicating with Charlee, and even assuming any such communication was abusive toward Charlee (for which no allegations have been made), the United States Court of Appeals for the Eighth Circuit has held that a teacher may not be held liable under § 1983 in relation to the verbal abuse of students.  *See Doe v. Gooden*, 214 F.3d at 955 (determining teacher's acts of "yelling and screaming at students, using foul language, telling students that their handwriting 'sucks,' telling students that 'if you had one eye and half a brain, you could do this,' calling students 'stupid,' and referring to students as 'bimbos,' 'fatso,' and the 'welfare bunch[]'" did not subject teacher to § 1983 liability as not violating students' constitutional rights.)

Further, as discussed, Plaintiffs do not allege Stoa had any contact with J.L., that J.L. was in any way subjected to sexual harassment, or otherwise allege facts to establish any violation of J.L.'s constitutional rights.  Plaintiffs' allegations that Stoa touched Charlee's hair and rubbed her back on one occasion in 2018 do not allege a constitutional violation.  Even assuming, arguendo,

such conduct constituted physical abuse, which it does not, in order for such physical abuse to amount to a constitutional violation, it must be "literally shocking to the conscience".  *See Doe v. Gooden*, 214 F.3d at 955-56 (in making the determination whether physical abuse rises to the level of a constitutional violation, the abuse must be "literally shocking to the conscience") (citations omitted).  Stoa's alleged conduct does not shock the conscience. In addition, even where the abuse shocks the conscience of the court, there must be a showing the defendant "had notice of a pattern of unconstitutional acts in order to support a finding of liability under § 1983."  *Id*. at 956. Plaintiffs have not alleged facts establishing any such pattern of unconstitutional acts.

Further, an alleged violation of state law, such as an alleged failure to report suspected abuse, does not amount to 'unconstitutional misconduct" as required to support a § 1983 claim. See *Doe v. Gooden*, 214 F.3d at 955 (school officials' failure to report suspected abuse in violation of state law requiring such reporting, does not amount to unconstitutional misconduct). "Violations of state law do not state a claim under 42 U.S.C. § 1983." *See Ebmeier v. Stump,* 70 F.3d 1012, 1013 (8th Cir.1995). "Section 1983 guards and vindicates federal rights alone." *Id.*

Plaintiffs' § 1983 claim must be dismissed for failure to allege a plausible violation of Plaintiffs' federal constitutional rights.

### 3.   Plaintiffs Have Not Alleged Facts To Establish Any Alleged Sex Discrimination Was The Result Of Any Oak Grove Custom, Policy, Or Practice

In addition, even if Oak Grove were determined to be acting under color of state law in relation to the Plaintiffs' § 1983 claim, "[a] plaintiff stating a [failure to take corrective action in response to an allegation of sexual harassment] claim under § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." *Fitzgerald,* at 257-58 (citing *Monell v. New*

*York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).  Plaintiffs have not alleged facts to establish Oak Grove had any particular custom, policy or practice of failing to take corrective action in response to allegations of sexual harassment.  Prior to the alleged incident of Stoa touching Charlee's hair and rubbing her back, the only allegation is that other parents had complained of unspecified "inappropriate conduct" by Stoa.  No allegations is made as to when these complaints were specifically made, by whom, to whom, involving whom, what the alleged inappropriate conduct was, where it occurred including whether the inappropriate conduct occurred in an environment or context under Oak Grove's control for which corrective action could have even been taken, etc.  Plaintiffs admit Oak Grove immediately terminated Stoa after Stoa was criminally charged in February 2021.  Plaintiffs have failed to allege facts to establish a custom, policy or practice of Oak Grove resulted in a violation of any of Plaintiffs' constitutional rights.  Dismissal of Plaintiffs' § 1983 claims against Oak Grove Defendants is also required on this basis.

### 4. Plaintiffs Have Not Alleged Facts To Establish Any Oak Grove Defendant Had Actual Knowledge Of Any Alleged Sex Discrimination Of Any Plaintiff

The United States Court of Appeals for the Eighth Circuit in *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010) determined that the same requirement of "actual knowledge" of the alleged sexual harassment applicable under a Title IX claim also applies to a claim under § 1983.

> Where both the Title IX and the § 1983 action allege discrimination by the same policymaking official and are premised on the same facts, *Cox* adopted comparable notice standards to prevent the § 1983 action from trumping "the Supreme Court's careful crafting of the implied statutory damage action under Title IX." *Id.* This resolution avoids the remedial dilemma that could arise if the notice standard for the § 1983 claim were less stringent than for the Title IX claim. *Id.* Accordingly, our court has held that an official in these circumstances must have "actual notice" of the alleged "sexual harassment" or "sexual abuse." *Cox,* 484 F.3d at 1067; *Gooden,* 214 F.3d at 956.

*Id.*  A school official must have "actual notice"/"actual knowledge" of alleged sexual harassment or sexual abuse before the alleged constitutional violation occurred, regardless of whether the

claim is under Title IX or § 1983.  *See Doe v. Gooden*, 214 F.3d at 956 (determining school officials could not be held liable under § 1983 as there was no evidence to establish they had actual notice of a teacher's alleged unconstitutional sexual behavior toward students before the sexual abuse at issue occurred.)  Plaintiffs have failed to allege facts to establish this requirement.  This failure is yet another independent basis upon which dismissal of Plaintiffs' § 1983 claim is required.

### 5.  Individual Oak Grove Defendants Are Entitled To Qualified Immunity

Even assuming, arguendo, that Oak Grove Defendants are state actors and were acting under color of state law, and assuming further Plaintiffs have alleged a plausible claim of violation of their federal constitutional rights, all of which is denied, individual Oak Grove Defendants would nonetheless be entitled to qualified immunity.  This is because, under the totality of the fact circumstances alleged by Plaintiffs, an objectively reasonable school official would not have believed their alleged conduct violated any of Plaintiffs' federal constitutional or statutory rights under then existing binding legal precedent.  As explained by the United States Supreme Court:

> The doctrine of qualified immunity protects government officials "from liability for  civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 818 ... (1982). Qualified immunity balances two important interests –the need to hold public officials accountable when they exercise power irresponsibly and  the need to shield officials from harassment, distraction, and liability when they perform  their duties reasonably. The protection of qualified immunity applies regardless of whether  the government official's error is "a mistake of law, a mistake of fact, or a mistake based  on mixed questions of law and fact." [citation omitted].
>
> ***
>
> Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." ... Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved **prior to discovery**." .... Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(bold added).  The Supreme Court has instructed

that the issue of qualified immunity be resolved "at the earliest possible stage of the litigation." *Pearson*, 555 U.S. at 231 (quotation omitted); *see Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011). This is because the defense is "an immunity from suit rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Mathers*, 636 F.3d at 399 (citing *Mitchell v. Forsyth*, 472 U.S. at 526). In addition, a "driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials be resolved prior to discovery." *Pearson*, 555 U.S. at 231 (quotation omitted).

> Qualified immunity protects government officials from liability under § 1983 when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 LEd.2d 666 (2002). The test for whether an officer is entitled to qualified immunity is twofold: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009); *Henderson v. Munn*, 439 F.3d 497, 501-02 (8th Cir. 2006). If no reasonable factfinder could answer yes to both of these questions, the officer is entitled to qualified immunity. *See Plemmons v. Roberts*, 439 F.3d 818, 822 (8th Cir. 2006).

*Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). The defendant has the burden of proof with the exception that the plaintiff must demonstrate that the law allegedly violated was clearly established. *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012).

In the present case, individual Oak Grove Defendants Slette, Wolf and Zachrison are entitled to qualified immunity as their alleged conduct did not violate any clearly established constitutional or statutory rights of Plaintiffs of which a reasonable person would have known. No reasonable person would have believed that Stoa's alleged conduct of touching Charlee's hair and rubbing her back on one occasion, and unsuccessful attempts to communicate with Charlee via

Snapchat and text, constituted sex discrimination.  Plaintiffs have not alleged any other specific conduct by Stoa occurring prior to the incidents involving Charlee amounting to sex discrimination, let alone any allegation to establish such incidents occurred in an environment and context under the control of Oak Grove, or that Oak Grove had actual knowledge of any prior sex discrimination by Stoa for which Oak Grove was deliberately indifferent, which indifference effectively caused a violation of Charlee's clearly established federal constitutional or statutory rights.

In addition, existing precedent must have placed the statutory or constitutional  question beyond debate.  As explained  by the Supreme Court of the United States:

> Although this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.  In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law. This Court has repeatedly told courts . . . not to define clearly established law at a high level of generality.
>
> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.
>
> ***
>
> . . . Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.

*Kisela v. Hughes*, 138 S.Ct. 1148, 1152-53 (2018) (per curiam) (numerous citations and quotations omitted). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Graham v. Barnette*, 5 F.4th 872, 887 (8th Cir. 2021), reh'g denied (Aug. 20, 2021). "This generally requires a plaintiff to 'point to existing circuit precedent that involves

sufficiently 'similar facts' to 'squarely govern' the officers' conduct in the specific circumstances at issue, or, in the absence of binding precedent, to present 'a robust consensus of cases of persuasive authority' constituting settled law." *Id.* (citing *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017). *Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020) (alterations to original)). "The plaintiff has the burden to prove that a right was clearly established at the time of the alleged violation." *Id.* (citing *Wilson v. Lamp*, 901 F.3d 981, 986 (8th Cir. 2018)). "A right is not clearly established by 'controlling authority' merely because it may be 'suggested by then-existing precedent.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct 577, 589-90 (2018)). "'[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Kidd*, 563 U.S. 731, 741 (2011). Qualified immunity applies when a plaintiff has "failed to identify a case where an [official] acting under similar circumstances . . . was held to have violated the [Constitution]." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks and citations omitted).

The undersigned counsel has been unable to locate a single case involving facts similar to those at issue in this case from any jurisdiction, let alone within the Eighth Circuit, in which a violation of a student's federal constitutional or statutory rights was found to have occurred. Defendants Slette, Wolf and Zachrison are entitled to qualified immunity.

### D.   THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs have invoked this Court's federal question jurisdiction over this dispute. (Doc. 1 at ¶ 9.) Therefore, in the event the Court dismisses Plaintiffs' claims under federal law for which this Court has original jurisdiction, there would be no justification for this Court to exercise supplemental jurisdiction over Plaintiffs' tort claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress governed by state law. Pursuant

to 28 U.S.C. § 1367(c)(3), this Court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original  jurisdiction[]".  "A district court's decision whether to exercise  [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is  purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations  omitted).  Therefore, in the event the Court dismisses all of Plaintiffs' federal question claims, Oak Grove Defendants request the Court decline to exercise supplemental jurisdiction over Plaintiffs' claims arising under state law.

In the alternative, should the Court decide to exercise supplemental jurisdiction to consider Plaintiffs' claims arising under state law, all such claims should nonetheless be dismissed for failure to state a claim upon which relief may be granted, as discussed below.

### E.   PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE NEGLIGENCE CLAIM (COUNT THREE)

Plaintiffs allege "individual Defendants failed to keep Plaintiff safe from sexual harassment in the face of a known assailant, leading to Plaintiff's injuries."  (Complaint [doc. 1] at ¶ 90.) Plaintiffs essentially allege Stoa abused Charlee (*id*. at ¶ 91), that "Slette and Wolf failed to investigate Defendant Stoa after a report came in of sexual harassment of a minor" (*id.* at ¶ 95), that Oak Grove failed to supervise Stoa (*id*. at ¶ 96).  However, all such claims are premised upon the legal conclusion Charlee was sexually harassed by Stoa.  As discussed, the pure allegations of fact as to what Stoa allegedly did with respect to Charlee did/does not constitute sexual harassment or discrimination, as a matter of law.  In addition, as discussed above, Plaintiffs pure allegations of fact do not establish any Oak Grove Defendant was aware of any risk of sexual harassment of Charlee by Stoa before Stoa's alleged conduct at issue occurred. Plaintiffs have failed to allege facts upon which relief may be granted.

F.   **PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**

The North Dakota Supreme Court has summarized the law on intentional infliction of emotional distress as follows:

> [¶ 40] In *Muchow v. Lindblad,* 435 N.W.2d 918, 923–25 (N.D.1989), this Court recognized a cause of action for the intentional infliction of emotional distress under Restatement (Second) of Torts § 46 (1965), requiring proof of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." "**The 'extreme and outrageous' threshold is narrowly limited to conduct that exceeds 'all possible bounds of decency' and which would arouse resentment against the actor and lead to an exclamation of " 'outrageous' " by an average member of the community."** *Hougum v. Valley Memorial Homes,* 1998 ND 24, ¶ 26, 574 N.W.2d 812. In *G.K.T. v. T.L.T.,* 2011 ND 115, ¶ 17, 798 N.W.2d 872, this Court reiterated that "*Muchow* and its progeny repeatedly emphasize the strenuously high, 'all possible bounds of decency' standard."
>
> [¶ 41] Whether the alleged actions meet the threshold of extreme and outrageous conduct is a question of law to be decided by the court. *Dahlberg v. Lutheran Soc. Servs.,* 2001 ND 73, ¶ 21, 625 N.W.2d 241. Thus, "[t]he court must initially decide whether a defendant's conduct reasonably may be regarded as 'extreme and outrageous.' " *Hougum,* 1998 ND 24, ¶ 26, 574 N.W.2d 812. However, "[i]f reasonable persons could differ, a plaintiff is entitled to have the trier-of-fact decide whether the conduct is sufficiently extreme and outrageous to result in liability." *Dahlberg,* at ¶ 21.

*Hysjulien v. Hill Top Home of Comfort, Inc.*, 2013 ND 38, ¶¶ 40-41, 827 N.W.2d 533, 549 (bold added).

In the present case, the conduct of Defendants as alleged by Plaintiffs, even if true, which is denied, does not meet the threshold of extreme and outrageous conduct. Stoa's alleged conduct as to Charlee of touching her hair and rubbing her back on one occasion, followed by unsuccessful attempts to contact her via Snapchat and texts, cannot reasonably be characterized as "extreme and outrageous", which exceeds all possible bounds of decency. Plaintiffs' intentional infliction of emotional distress fails as a matter of law on this basis alone.

In addition, although Plaintiffs have alleged "damage to reputation, humiliation, mental anguish, and emotional distress" in the prayers for relief following each cause of action, and have

alleged "severe emotional harm" in relation to Plaintiffs' intentional emotional distress claim (doc. 1 at ¶¶101, 104), all such allegations are mere legal conclusions without any supporting alleged factual basis. The Court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d at 805, or legal conclusions that the plaintiff draws from the facts pled. *Westcott v. City of Omaha*, 901 F.2d at 1488. Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint. *Clemons v. Crawford*, 585 F.3d at 1124. Plaintiffs merely provide a formulaic recitation of the elements of the claim, which is not sufficient to establish Plaintiffs entitlement to relief based on alleged facts. *Zutz v. Nelson*, 601 F.3d at 848 ("although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). "[A] plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims, . . ., rather than facts that are merely consistent with such a right.'" *Gregory v. Dillard's, Inc*., 565 F.3d at 473, quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d at 521. Plaintiffs' intentional infliction of emotional distress claim fails as a matter of law on this basis as well.

## G.   PLAINTIFFS FAIL TO ALLEGE A PLAUSIBLE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

The North Dakota Supreme Court has summarized applicable law in relation to a claim of negligent infliction of emotional distress as follows:

[¶ 44] For a claim of negligent infliction of emotional distress, a "plaintiff claiming negligent infliction of emotional distress must show 'bodily harm.' " *Hougum,* 1998 ND 24, ¶ 29, 574 N.W.2d 812 (quoting *Muchow,* 435 N.W.2d at 921); *see also* Restatement (Second) of Torts § 436A (1965) ("If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."). "The bodily harm essential to sustain a claim for relief for negligent infliction of emotional distress is defined in Restatement 2d Torts § 15 (1965) as 'any physical impairment of the condition

of another's body, or physical pain or illness.' " *Muchow,* at 921. "Bodily harm may be caused not only by impact or trauma, but also by emotional stress." *Id.* We have explained, however, that transitory phenomena do not meet the requisite showing of "bodily harm":

> "The rule stated in this Section [Restatement (Second) Torts § 436A (1965) ] applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation. The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable *where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm.* On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law."

*Hougum,* 1998 ND 24, ¶ 29, 574 N.W.2d 812 (quoting *Muchow,* at 921;  Restatement (Second) Torts § 436A cmt. c (1965)).

*Hysjulien v. Hill Top Home of Comfort, Inc.*, 2013 ND 38, ¶ 44. The Court in *Hysjulien* determined the plaintiff's allegations that following her assault, "she started suffering from anxiety, fear, frequent and severe headaches, she became short-tempered with her family and her sex life with her husband diminished", were insufficient to establish "bodily harm" as required to support a claim of negligent infliction of emotional distress as there was "no evidence to establish such symptoms were anything other than transitory phenomena, rather than long, continuing ailments amounting to physical ailments."  (*Id*. at ¶ 45.)

In the present case, Plaintiffs merely allege in conclusory fashion that they suffered "damage to reputation, humiliation, mental anguish, and emotional distress" in Plaintiffs' prayers for relief following each cause of action, and allege "severe emotional harm" in relation to Plaintiffs' intentional emotional distress claim (doc. 1 at ¶¶101, 104).  All such allegations are mere legal conclusions without any supporting alleged factual basis – allegations which this Court should ignore for purposes of this Rule 12 motion to dismiss.  Plaintiffs do not allege facts

establishing "bodily injury" as required to support a negligent infliction of emotional distress claim, thereby warranting dismissal of this claim as a matter of law.

### H.   PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED

Plaintiffs' request the same injunctive relief in relation to all five counts, as follows:

> (b)   Enter judgment against Defendants and in favor of each Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants and appropriate discipline of each of the individual Defendants, as well as requiring Defendants to offer Plaintiff access to an externship in her field.

(Complaint [doc. 1] at prayers for relief on pp. 11-12, 14, 16-17, 20, 22.)  The request for injunctive relief should be dismissed as a matter of law.

Plaintiffs lack standing to request injunctive relief as to any claim as they are no longer students of Oak Grove and they cannot establish they face the threat of ongoing or future harm from Stoa's alleged past conduct, or by any actions by Oak Grove Defendants absent injunctive relief.  As explained by the United States Court of Appeals for the Eighth Circuit:

> In the case of complaints for injunctive relief, the "injury in fact" element of standing requires a showing that the plaintiff faces a threat of ongoing or future harm. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–05, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). "[I]t is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] "certainly impending ." ' " *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, [190], 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000), quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), itself quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923), *reaff'd,* 263 U.S. 350, 44 S.Ct. 123, 67 L.Ed. 1144 (1923).

*Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).  In addition to neither Plaintiff being a student at Oak Grove any longer, Stoa was also terminated by Oak Grove and banned from Oak Grove's premises in February of 2021 for unrelated reasons.  It is therefore not possible for

Plaintiffs to be subjected to sex discrimination by Stoa under any context or environment under the control of Oak Grove.

In addition to a lack of standing, Plaintiffs' request for injunctive relief is also moot. Plaintiffs' request for a fair investigation of and discipline of Stoa is moot. Stoa was terminated by Oak Grove for unrelated reasons in February of 2021 and is no longer under the control of Oak Grove and Oak Grove has no authority or ability to discipline Stoa further. Plaintiffs' request for investigation of any other Defendant and for discipline of any other Defendant, makes no sense in context. Query what the other Defendants would be investigated for? In addition, neither Charlee nor J.L. have requested readmission to Oak Grove. As Charlee has graduated from another high school, any claim for readmission to Oak Grove would also be moot. *See Grandson v. University of Minnesota*, 272 F.3d 568, 574-75 (8th Cir. 2001) (finding request for injunctive relief requiring university to create women's varsity hockey team to be moot due to plaintiff no longer being a student at the university); *McFarlin v. Newport Special School Dist.*, 980 F.2d 1208, 1211-12 (8th Cir. 1992) (finding student's request for injunctive reinstatement to high school basketball team to be moot due to student's graduation: "[t]hrough the passage of time and the occurrence of irrevocable events, disputes may disappear so that federal courts no longer can grant effective relief." [*id*. at 1210]).

Further, Plaintiffs' (presumably Charlee's) request for access to an externship in her field (i.e. give her a job) is essentially an improper request for compensatory relief in the guise of injunctive relief. Such requested relief would not pertain to protecting Plaintiffs from threatened and impending injury. Injunctive relief is not applicable in this context and such request for relief should be dismissed. Also, the request to participate in an externship at Oak Grove by any Plaintiff is contrary to Plaintiffs' allegations of being subjected to emotional distress by Defendants.

## V.    CONCLUSION

For the reasons discussed above, Oak Grove Defendants request the Court dismiss all of Plaintiffs' claims arising under federal law, and refuse to exercise supplemental jurisdiction over Plaintiffs' claims arising under state law.  In the alternative, Oak Grove Defendants request all of Plaintiffs' claims as against all Defendants be dismissed, in their entirety, as a matter of law.

Dated the 24th day of April, 2023.

BAKKE GRINOLDS WIEDERHOLT

By:      */s/ Shawn A. Grinolds*
Shawn A. Grinolds (#05407)
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
sgrinolds@bgwattorneys.com

Attorney for Oak Grove Lutheran School, Michael Slette, Brent Wolf and Aimee Zachrison

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS OAK GROVE LUTHERAN SCHOOL, MICHAEL SLETTE, BRENT WOLF AND AIMEE ZACHRISON'S MOTION TO DISMISS**  was on the 24th day of April, 2023, was filed electronically with the Clerk of Court through ECF.

Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Road, Ste 375
Farmington Hills, MI 48334
keithaltman@kaltmanlaw.com

William P. Harrie
Nilles Law Firm
1800 Radisson Tower
P.O. Box 2626
Fargo, ND 58108
wharrie@nilleslaw.com

By: */s/ Shawn A. Grinolds*
       SHAWN A. GRINOLDS